# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 06-30082-DHW
                                         Chapter 13
EDITH MONTGOMERY HALL,

    Debtor.

## MEMORANDUM OPINION

Wells Fargo Financial Acceptance ("Wells Fargo") filed an objection to confirmation of Edith Montgomery Hall's chapter 13 plan. Two issues are presented here. The court must first determine whether Wells Fargo, by refinancing the original loan, destroyed the purchase-money status of its security interest in the debtor's automobile. If not, the next issue is whether Hall incurred the debt to Wells Fargo within the 910-day period preceding the filing of her bankruptcy petition for relief.

### Jurisdiction

The court's jurisdiction in this matter derives from 28 U.S.C. § 1334 and from the United States District Court for this district's general order referring title 11 matters to this court. Further, because the issue concerns confirmation of a plan, this is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(L), thereby extending this court's jurisdiction to the entry of a final order or judgment.

### Undisputed Facts

The debtor purchased a 2001 Chevrolet Tahoe in January 2003 jointly with another person. Wells Fargo financed the purchase and retained a security interest in the automobile. The debtor and co-purchaser were jointly liable on the obligation.

Thereafter, the co-purchaser died, and in order to remove the co-purchaser's name from the vehicle's title, the debtor refinanced the note with Wells Fargo in June 2004. The refinancing changed none of the terms of the original note other than to remove the co-purchaser's name. The refinancing occurred within 910 days of the debtor's January 27, 2006 bankruptcy petition.

Legal Conclusions

11 U.S.C. § 1325(a)(5) prescribes the range of treatment of a secured claim by a chapter 13 plan. Absent the secured creditor's consent, the plan may not be confirmed unless 1) the creditor will retain its lien on the collateral until the claim is fully paid or discharged, and the value of the collateral, together with interest thereon, will be paid in equal monthly installments in an amount sufficient to adequately protect the creditor, or 2) the debtor will surrender the collateral.[1]

---

[1] The text of the statute provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
  (5) with respect to each allowed secured claim provided for by the plan—
    (A) the holder of such claim has accepted the plan;
    (B)(i) the plan provides that—
      (I) the holder of such claim retain the lien securing such claim until the earlier of–
        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
      (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added further qualifications for the treatment of secured claims in chapter 13 cases. The relevant BAPCPA provision provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(unnumbered, hanging paragraph at the end of

---

> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if—
>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).

3

the subsection). Recently, this court held that the nonapplication of section 506 prevents the bifurcation of an undersecured claim into its secured and unsecured parts. In re Wright, 338 B.R. 917 (Bankr. M.D. Ala. 2006); In re Horn, 338 B.R. 110 (Bankr. M.D. Ala. 2006). Thus, a creditor having a purchase-money security interest in a motor vehicle on a debt incurred within 910 days of the bankruptcy filing must have its claim treated as fully secured.

Whether the refinancing of the original debt destroys a purchase-money security interest is a question of state law. Alabama law defines a purchase-money security interest by utilizing two other defined terms, namely "purchase-money collateral" and "purchase-money obligation." The statute provides: "A security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase-money collateral with respect to that security interest . . . . *Ala. Code § 7-9A-103(b) (1975).*

The statute then defines "purchase-money collateral" as "goods or software that secures a purchase-money obligation incurred with respect to that collateral." *Ala. Code § 7-9A-103(a)(1) (1975).*

Finally, "purchase-money obligation" is defined as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." *Ala. Code § 7-9A-103(a)(2) (1975).*

In Horn this court faced the issue of whether a creditor, by refinancing an automobile loan, lost its purchase-money status. In that case, the debtor had refinanced her car on several occasions, each time receiving additional cash advances from the lender. Because the purchase-money collateral (the car) secured more than the purchase-money obligation (the funds used to acquire the car), the court concluded that the secured creditors' security interest was

4

not a purchase-money one.

The instant case differs dramatically from *Horn.* Edith Hall refinanced only the exact unpaid balance of the original loan. No further cash advance was extended in the refinancing nor was the original loan consolidated with any other indebtedness. Because the refinanced debt represents only the funds used to acquire the vehicle, the refinanced debt remains a purchase-money obligation. In other words, because the vehicle in this case secures only the funds used to acquire it, Wells Fargo continues to have a purchase-money security interest in the vehicle. *See Skinner's Furniture Store of Greenville, Inc. v. McCall (In re McCall)*, 62 B.R. 57 (M.D. Ala. 1985).

Having found that Wells Fargo holds a purchase-money security interest in the debtor's vehicle, the court must next decide whether the debt was incurred within the 910 days preceding the debtor's bankruptcy filing. The debtor contends that the debt to Wells Fargo was incurred in January 2003, outside the 910-day period, and her chapter 13 plan proposes to bifurcate the claim. Wells Fargo contends that the debt was incurred in June 2004 within the 910-day period when debt was refinanced and that its secured claim may not be stripped down.

The Code does not define the phrase "the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition" as used in the unnumbered, hanging paragraph at the end of § 1325(a). Neither does the legislative history shed light on the meaning of the phrase. Nor is it plainly clear from the language of the statute how the drafters intended this statute to operate in the context of a debt refinance situation.

It is clear that Congress intended to favor lenders who finance vehicle purchases for consumer debtors within a limited period of

5

time prior to bankruptcy (approximately 2 ½ years). However, by quantifying a time within which the secured creditor is protected from bifurcation, Congress signaled its intent to limit the scope of the safe harbor.

Defining the term "incurred" as the date of the original loan as opposed to the date of the refinancing better implements the Congressional policy of limiting the safe harbor to a definite period of time and to a specific category of creditors – those holding purchase-money security interests. Wells Fargo received the purchase-money security interest on the date of the original loan, not on the date the debt was refinanced.

Finally, in the case at bar this result is warranted for another reason. Apart from removing the co-purchaser's name from the note, the refinancing resulted in no changes to any of the terms of the original note. Therefore, for the debtor, the second note was in essence a restatement of the same obligation. The greater the extent the later note changes the terms of the former, the more likely the court is to find that the second, refinancing note is an organically different obligation. Hence, the greater the extent that the later note contains different terms from the original obligation, the more powerful the argument that the refinancing date constitutes the date the debt was incurred. Such was not the case here because no other terms changed.

For these reasons, a separate order overruling the objection to confirmation will enter and the plan will be confirmed.

Done this the 15th day of May, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

6

c: Debtor
   Paul D. Esco, Attorney for Debtor
   William C. Poole, Attorney for Wells Fargo Financial Acceptance
   Curtis C. Reding, Trustee